Brian E. Lahti (CA Bar No. 278951)
  BLahti@LHlitigation.com
**LAHTI HELFGOTT LLC**
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone:  650.390.4075

Attorneys for Plaintiff CAO GROUP, INC.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAO GROUP, INC., a Utah Corporation, <br><br> Plaintiff, <br><br> v. <br><br> GuruNanda, LLC a Delaware Limited Liability Company <br><br> Defendant. | Case No.: 8:25-cv-002074 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Lahti Helfgott LLC

## COMPLIANT FOR PATENT INFRINGEMENT

Plaintiff CAO Group, Inc. ("CAO" or "Plaintiff") by and through its counsel, LAHTI HELFGOTT LLC, hereby files this Complaint and makes the following allegations of patent infringement relating to U.S. Patent Nos. 10,602,259 ("'259 Patent"), 10,646,419 ("'419 Patent"), 11,219,582 ("'582"), 11,826,444 ("'444 Patent"), and 11,826,445 ("'445 Patent") (collectively, the "Patents-In-Suit") against Defendant GuruNanda LLC ("GuruNanda" or "Defendant"):

## PARTIES

1.  Plaintiff CAO is a Utah corporation with a principal place of business at 4628 West Skyhawk Drive, West Jordan, UT 84084.

2.  Defendant GuruNanda is a Delaware limited liability company that is registered to do business in that State of California with a principal place of business in Buena Park, California.

## JURISDICTION AND VENUE

3.  This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court thus has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4.  The Court has both specific and general personal jurisdiction over GuruNanda pursuant to due process and/or the California Long Arm Statute because GuruNanda has committed acts within the State of California and this District giving rise to this action and have established minimum contacts with this forum such that the exercise of jurisdiction over GuruNanda would not offend traditional notions of fair play and substantial justice. GuruNanda has (i) availed itself of the rights and benefits of the laws of the State of California. (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of California and in this District, (iii) derived substantial revenue from the sales and/or use of products, such as the

Lahti Helfgott LLC

accused products, in the State of California and in this District, (iv) purposefully directed activities, directly and/or through intermediaries, such as manufacturing, shipping, distributing, offering for sale, selling, and/or advertising the accused products, at residents of the State of California and residents of this District, (v) delivered accused products into the stream of commerce with the expectation that the accused products will be used and/or purchased by consumers in the State of California and in this District, and (vi) committed acts of patent infringement in the State of California and in this District.

5.  Venue is proper in this District as to GuruNanda under 28 U.S.C. § 1400(b) because GuruNanda has committed acts of infringement within this District, as further detailed herein, and GuruNanda has a regular and established places of business within this District where it manufactures, markets, and distributes infringing products. *See TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 137 S. Ct. 1514 (2017).

## FACTUAL BACKGROUND

6.  CAO was founded by Dr. Densen Cao, PhD, in Salt Lake County, Utah in 2000, following Dr. Cao's completion of Ph.D. studies in Materials Science and Engineering from the University of Utah. Before founding CAO, Dr. Cao also served as coordinator of material science at Clinical Research Associated, where he examined dental materials, such as glass ionomers and their fluoride release, the properties of composites and adhesives, and dental equipment, and serving as a staff engineer at Fairchild Semiconductor, respectively

7.  Over the course of years of research and development, CAO has invented and patented ground-breaking advancements in the dental, oral health, and LED lighting fields, among others. CAO has publicly disclosed its novel inventions in more than 192 issued patents and/or published patent applications world-wide.

8.  For example, Dr. Cao invented LED curing light technology for use in dental

applications, which nearly all major dental manufacturers have licensed. Dr. Cao also invented LED light sources for general lighting purposes which have been widely adopted by nearly all providers in the lighting field.

9. CAO also developed and patented technology underlying the first compact and portable soft-tissue diode laser, receiving several patents in the process, including, but not limited to U.S. Patent Nos. 7,485,116; 8,337,097; 8,834,457; 8,961,040; and 9,967,883. These diode laser technologies are prolific throughout dental practices, and major companies in this field license CAO's technology.

10. In 2006, CAO moved into a 60,000 square-foot facility in West Jordan, Utah, which houses its Research and Development, Engineering, Manufacturing, Global Logistics, Customer Support, Marketing and Sales teams.

11. CAO created advanced dental strip technologies to deliver various medications and other ingredients, including improved professional whitening products. These improved dental whitening strips contained chemical compositions that permitted higher concentrations of active whitening agents with an improved fit to conform to teeth, which thus delivered faster and improved results in a shorter time as compared with previously-existing technology. CAO's efforts in this field resulted in the United States Patent and Trademark Office ("USPTO") granting CAO numerous patents related to such technologies.

12. In 2010, CAO launched its Sheer White! Teeth Whitening Strips products for dental patients' in-home use. CAO advertises that, while wearing this product, due to the patented non-slip formula, the user can talk, drink [cool beverages], work out, and get on with their day. *See https://sheerwhitesmile.com/pages/sheer-white-system* (Last visited September 8, 2025).

13. That same year, CAO entered into an exclusive relationship with Henry Schein, the world's largest distributor of professional dental equipment and supplies, to

Lahti Helfgott LLC

distribute CAO's core dental products, including Sheer White! Whitening Strips.

14. On information and belief, CAO's Sheer White! Whitening Strips became the top selling teeth whitening product within the Henry Schein distribution channel.

15. CAO's Sheer White! Whitening Strips are marked with the Patents-in-Suit. https://caogroup.com/pages/patents (Last visited September 8, 2025).

16. In January 2014, CAO launched Lumist Advanced Teeth Whitening Strips ("Lumist") that is a next generation tooth whitening strip "with Non-Slip Comfort Fit Technology" that gives you up to 5 shades in just 5 days" and can be worn "while talking, drinking, tanning or exercising." https://lumistoralcare.com/products/lumist-advanced-teeth-whitening-strips (Last visited September 8, 2025).

17. Lumist is sold through online platforms and has been recognized on Amazon's platform as an "Amazon's Choice" product.

18. CAO's Lumist are marked with the Patents-in-Suit. https://caogroup.com/pages/patents (Last visited September 8, 2025).

## ASSERTED U.S. PATENT NO. 10,603,259

19. CAO owns the '259 Patent, and holds all substantial rights, title, and interest in and to the '259 Patent, including the right to sue for infringement. A true and correct copy of the '259 Patent is attached as **Exhibit A**.

20. The '259 Patent is titled "PEROXIDE GEL COMPOSITION" and issued on March 31, 2020 for U.S. Patent Application No. 15/488,293, filed April 14, 2017. The '259 Patent ultimately claims priority to an application filed February 8, 2006.

21. Mr. Steven D. Jensen, a CAO chemist, is a co-inventor of the '259 Patent. Mr. Jensen has worked with CAO for more than fifteen years, during which time he has served and continues to serve as a prolific inventor, including of more than sixty CAO U.S. patents and published applications. As a chemist at CAO, Mr. Jensen contributed numerous innovations including advanced teeth whitening strips, root canal disinfection,

Lahti Helfgott LLC

reversible cement, disinfection products, and many others. Prior to joining CAO, Steve Jensen worked as a chemist for several years at Ultradent, a global dental manufacturing company, during which time he contributed to the development of many products, including whitening, pit and fissure sealants, pulp capping agent, luting cement, bonding agents, and caries detection technologies. Mr. Jensen has also lectured nationally on the topic of oral healthcare science and technology.

22. Dr. Densen Cao is the other named inventor on the '259 Patent.

23. The '259 Patent generally describes dental bleaching devices such as a flexible backing material with a dental composition containing various agents that will not crack or break when the dental bleaching device is flexed. ('259 Patent, Abstract.)

24. The '259 Patent discloses several problems with prior art dental bleaching approaches. For example, the prior art dental trays that used fluids or high-viscosity fluidic gels are very difficult to make and design so that they fit all users and contact teeth evenly due to variations in teeth anatomy. The prior art dental trays were also cumbersome and painful to use. What is more, fluids or high-viscosity fluidic gels used in prior art dental trays or dental strips were messy, they would not remain in or on dental trays and strips, were not sufficiently adhesive to remain on the teeth, and various prior art strips failed to contact uneven teeth, resulting in gaps that would allow saliva to enter and dilute and/or wash away whitening gel. ('259 Patent, 2:25-3:50.)

25. What is more, more rigid or solidified prior art compositions either involved two-part treatments that required combination immediately prior to use, which could be messy and inconvenient, and could not be stored as pre-mixed shelf stable compositions because they would decompose into a dry powder and degraded peroxide, and/or would crack or break when flexed. ('259 Patent, 3:51-4:19.)

26. The '259 Patent discloses improved bleaching devices that use compositions with thickening agents that include at least Poly(2-ethyl-2-oxazoline) or polyvinylprrolidone

Lahti Helfgott LLC

("PVP") in a manner that allows higher concentrations of peroxide bleaching agent to be used, in a highly viscous composition that can be stored at room temperature for six months. ('259 Patent, 6:28-43; 10:3-7).

27. The '259 Patent further discloses that:

[T]he gels form a bleaching compound that will conform to a user's dental arches and form a bleaching tray **10** without cracking or breaking (**FIG**. **3**). The resultant compound is visco-elastic, and gelatinous, having flexibility and consistency similar to the popular confection known as gummi worms, and will deform when removed from the backing material. The resultant tray is initially planar: with a significant body of gelatinous whitening composition adhered to backing.

('259 Patent, 8:16-24).

28. The '259 Patent also discloses:

For purposes of this Application, the term "gelatinous" shall have the definition given first in the American Heritage Dictionary of the English Language, Fourth Edition, ©2006 by Houghton Mifflin Co.: "resembling gelatin, viscous." A gelatinous compound shall be a visco-elastic compound having physical deformation properties between a solid and a fluid. A solid shall be defined as a substance that is sufficiently rigid so that it maintains its form indefinitely, independent of any structure or support. A fluid shall be defined as a substance that will conform and coalesce to the shape of a beaker into which multiple samples of the same substance are placed, within 10 minutes, with hand agitation of the container and/or hand mixing with an implement at 25° C. with an atmospheric pressure of 1 ATM. Therefore, a gelatinous compound, as the term is used in this Application, will have some degree of flex and deformation as required to fit inside a container, but will not coalesce so that a specific sample or portions thereof are still determinable. This is particularly evident if a number of discrete units of gelatinous material are placed in a container-they will bend as they contact the container but will not merge into one body.

('259 Patent, 5:49-6:3).

29. The inventive subject matter of the '259 Patent is characterized by its three independent claims and 30 total claims, interpreted in view of its specification and prosecution history. Claim 1 of the '259 Patent is set forth below:

1.    A dental bleaching device, comprising:

a dental bleaching device comprising a dental composition on a strip of backing material, wherein the strip of backing material is flexible and insoluble in water;

wherein the dental bleaching device is packaged in a package;

wherein the dental composition, when applied on the strip of backing material, comprises a peroxide bleaching agent, a first solvent, and a thickening agent;

wherein the first solvent is water;

wherein the thickening agent is at least one of poly(2-ethyl-2-oxazoline) and polyvinylpyrrolidone;

wherein, when the dental composition is applied on the strip of the backing material, the thickening agent is included in an amount more by weight of the dental composition than the water:

wherein the dental composition is dried after being applied on the strip of backing material;

wherein the dental composition is gelatinous and viscoelastic
- (a) after the dental composition has been applied on the backing material and dried,
- (b) during storage of the dental bleaching device at room temperature for a period of time up to six months in package,
- (c) after the dental bleaching device has been removed from the package, and
- (d) when the dental composition is flexibly positioned on teeth; and

wherein the dental composition has physical deformation properties such that, after the dental bleaching device has been removed from the package, the dental composition may be positioned on surfaces of adjacent teeth in a dental arch, bend and conform to surfaces of adjacent teeth in a dental arch and remain on the strip of backing material during use.

30. By virtue of the USPTO's issuance of the '259 Patent, each of the above claims was shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

## ASSERTED U.S. PATENT NO. 10,646,419

31. CAO owns the '419 Patent, and holds all substantial rights, title, and interest in and to the '419 Patent, including the right to sue for infringement. A true and correct copy of the '419 Patent is attached hereto as **Exhibit B**.

32. The '419 Patent is entitled "PEROXIDE GEL COMPOSITIONS" and issued on May 12, 2020 from U.S. Patent Application No. 15/627.906, filed on June 20, 2017. The '419 Patent ultimately claims priority to an application filed February 8, 2006.

33. Similar to the '259 Patent, Mr. Jensen and Mr. Cao are the named co-inventors on

Lahti Helfgott LLC

the '419 Patent.

34. The '419 Patent and the '259 Patent issued from applications that were each continuation applications stemming from the same parent application, namely, Patent Application No. 14/710.416 (now U.S. Patent No. 9,789,036). As such, the specifications of the '419 Patent and the '259 Patent are substantively identical, and the disclosures discussed above with respect to the '259 Patent at paragraphs 19-25 apply likewise to the '419 Patent, and such paragraphs are fully incorporated as if made here for the '419 Patent.

35. The inventive subject matter of the '419 Patent is characterized by its three independent claims and 35 total claims, interpreted in view of its specifications and prosecution history. Claim 1 of the '419 Patent is as follows:

1.      A dental bleaching device, comprising:

a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides;

a dental composition on one of the flat sides of the strip of backing material such that at least substantially all of one side of the backing material is covered solely by the dental composition;

wherein the dental composition, when applied on the strip of backing material, comprises a peroxide bleaching agent, a first solvent, and a thickening agent;

wherein the first solvent is water;

wherein the thickening agent comprises is at least one of poly(2-ethyl-2-oxazoline) and polyvinylpyrrolidone;

wherein the dental composition is dried after being applied on the strip of backing material;

wherein the dental composition is gelatinous and viscoelastic
(a) after the dental composition has been applied on the backing material and dried,

(b) during storage of the dental bleaching device at room temperature for a period of time up to six months in a package,

(c) after the dental bleaching device has been removed from a package, and

(d) when the dental composition is flexibly positioned on teeth;

wherein the dental composition has physical deformation properties such that, after the dental bleaching device has been removed from the package, the dental composition may be positioned on surfaces of adjacent teeth in a dental arch, bend and conform to surfaces of adjacent teeth in a dental arch and remain on the strip of backing material during use; and

wherein the dental composition has adhesive properties such that, after the dental bleaching device has been removed from a package and is then positioned on adjacent teeth in a dental arch, the dental composition will adhere to surfaces of adjacent teeth in a dental arch.

36. By virtue of the USPTO's issuance of the '419 Patent, each of the above claims was shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

## ASSERTED U.S. PATENT NO. 11,219,582

37. CAO owns the '582 Patent, and holds all substantial rights, title, and interest in and to the '582 Patent, including the right to sue for infringement. A true and correct copy of the '582 Patent is attached as **Exhibit C**.

38. The '582 Patent is entitled "PEROXIDE GEL COMPOSITION" and issued on January 11, 2022 from U.S. Patent Application No. 16/784,582, filed February 7, 2020. The '582 Patent ultimately claims priority to an application filed February 8, 2006.

39. Mr. Jensen is an inventor of CAO's '582 Patent. CAO has petitioned and the USPTO has approved the addition of Mr. Cao as a co-inventor on the '582 Patent. (*See* **Exhibit D**).

40. The '582 Patent issued from an application that was a continuation application stemming from Patent Application No. 15/627,906 (now the '419 Patent), and the '419 Patent and '259 Patent issued from applications that were each continuation applications from the same patent application, namely, Patent Application No. 14/710.416 (now Patent No. 9,789,036). As a result, the specifications of the '582 Patent, '419 Patent, and '259 Patent are substantively identical, and the disclosures discussed above as to the '259 Patent at paragraphs 19-25 apply likewise to the '582 Patent, and such paragraphs

are fully incorporated as if made here for the '582 Patent.

41. The inventive subject matter of the '582 Patent is characterized by its two independent claims, interpreted in view of its specification and prosecution history. Claim 1 of the '582 is as follows:

> 1.    A dental bleaching device, comprising:
>
> a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides;
>
> a dental composition being applied to at least a portion of one of the flat sides of the strip of backing material;
>
> the dental composition being comprised of a peroxide bleaching agent, a solvent, and a thickening agent, said thickening agent being at least one thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and polyvinylpyrrolidone (PVP);
>
> the dental composition having been dried to an extent that it no longer remains in a state of fluidity;
>
> wherein the dried dental composition is gelatinous, non-coalescent, and visco-elastic such that when adhered to a user's dental arch both the dental composition and the backing material flex and conform to a user's dental arch without cracking or breaking.

42. By virtue of the USPTO's issuance of the '582 Patent, each of the claims was shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

### ASSERTED U.S. PATENT NO. 11,826,444

43. CAO owns the '444 Patent, and holds all substantial rights title, and interest in and to the '444 Patent, including the right to sue for infringement. A true and correct copy of the '444 Patent is attached as **Exhibit E**.

44. The '444 Patent is entitled "PEROXIDE GEL COMPOSITION" and issued on November 28, 2023 from U.S. Patent Application No. 17/659,473, filed April 15, 2022. The '444 Patent ultimately claims priority to an application filed February 8, 2006.

45. Mr. Jensen and Mr. Cao are co-inventors of the '444 Patent.

Lahti Helfgott LLC

46. The '444 Patent issued from an application that was a continuation application stemming from Patent Application No. 16/784,582 (now the '582 Patent), the '582 Patent issued from an application that was a continuation application of Patent Application No. 15/627,906 (now the '419 Patent), and the '419 Patent and '259 Patent issued from applications that were each continuation applications from the same patent application, namely, Patent Application No. 14/710.416 (now Patent No. 9,789,036). As a result, the specifications of the '444 Patent, '582 Patent, '419 Patent, and '259 Patent are substantively identical, and the disclosures discussed above as to the '259 Patent at paragraphs 19-25 apply likewise to the '444 Patent, and such paragraphs are fully incorporated as if made here for the '444 Patent.

47. The inventive subject matter of the '444 Patent is characterized by its three independent claims and 6 total claims, interpreted in view of its specification and prosecution history. Claim 1 of the '444 is as follows:

**1.** A dental whitening device, comprising:

a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides;

a gelatinous, non-coalescent, visco-elastic, dental composition conjoined to at least a portion of one of the flat sides of the strip of backing material, the dental composition be comprised of a tooth whitening agent, a solvent, and a thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and polyvinylpyrrolidone (PVP);

wherein when adhered to a user's dental arch both the dental composition and the backing material flex and conform to the user's dental arch without cracking or breaking.

48. By virtue of the USPTO's issuance of the '444 Patent, each of the claims was shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

## ASSERTED U.S. PATENT NO. 11,826,445

49. CAO owns the '445 Patent and holds all substantial rights title, and interest in it,

Lahti Helfgott LLC

including the right to sue for infringement. A true and correct copy of the '445 Patent is attached as **Exhibit F**.

50. The '445 Patent is entitled "PEROXIDE GEL COMPOSITION" and issued on November 28, 2023 from U.S. Patent Application No. 18/049,843, filed October 26, 2022. The '445 Patent ultimately claims priority to an application filed February 8, 2006.

51. Mr. Jensen and Mr. Cao are co-inventors of the '445 Patent.

52. The '445 Patent issued from an application that was a continuation application stemming from Patent Application No. 17/659,473 (now the '444 Patent), the 444 Patent issued from an application that was a continuation application stemming from Patent Application No. 16/784,582 (now the '582 Patent), the '582 Patent issued from an application that was a continuation application of Patent Application No. 15/627,906 (now the '419 Patent), and the '419 Patent and '259 Patent issued from applications that were each continuation applications from the same patent application, namely, Patent Application No. 14/710.416 (now Patent No. 9,789,036). As a result, the specifications of the '445 Patent, '444 Patent, '582 Patent, '419 Patent, and '259 Patent are substantively identical, and the disclosures discussed above as to the '259 Patent at paragraphs 19-25 apply likewise to the '445 Patent, and such paragraphs are fully incorporated as if made here for the '445 Patent.

53. The inventive subject matter of the '445 Patent is characterized by its two independent claims, interpreted in view of its specification and prosecution history. Claim 1 of the '445 is as follows:

1. A dental whitening device, comprising:

   a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides;

   a gelatinous, non-coalescent, visco-elastic, dental composition conjoined to at least a portion of one of the flat sides of the strip of backing material, the dental composition be comprised of a peroxide bleaching agent, a solvent, and a

Lahti Helfgott LLC

thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and polyvinylpyrrolidone (PVP);

wherein when adhered to a user's dental arch both the dental composition and the backing material flex and conform to the user's dental arch without cracking or breaking.

54. By virtue of the USPTO's issuance of the '445 Patent, each of the claims was shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

## GURUNANDA'S KNOWLEDGE OF CAO'S PATENTS

55. On September 5, 2023, CAO sent a letter to GuruNanda notifying GuruNanda that the teeth whitening strips sold in the United States under its GuruNanda brand and the licensed Mentadent brand infringe the '259 Patent, '419 Patent, and '582 Patent. Specifically, CAO informed GuruNanda that, at a minimum, the GuruNanda products Sig-nature Whitening Strips and the Mentadent Whitening Strips, infringe at least one claim of the '259 Patent, '419 Patent, and '582 Patent.

56. GuruNanda never responded to the September 5th correspondence.

## OVERVIEW OF GURUNANDA'S INFRINGING ACTIVITIES

57. GuruNanda uses, distributes, markets, sells, and/or offers to sell in the United States its Guru Nanda Premium Whitening Strips (both 7-day treatment and 16-day treatment), including selling the Premium Whitening Strips online at gurunanda.com. *See* https://gurunanda.com/products/whitening-strips-7-day-treatment (last visited September 8, 2025).

58. GuruNanda also manufactures, uses, distributes, markets, sells, and/or offers to sell in the United States the Mentadent Whitening Strips with Coconut Oil and Sig-nature Whitening Strips (collectively with Premium Whitening Strips, "GuruNanda Whitening Strips").

59. The Premium Whitening Strips are advertised as providing a "dry-strip formula combines hydrogen peroxide with soothing coconut extracts, helping to break down

Lahti Helfgott LLC

stains & whiten teeth" and that the strip "[h]olds comfortably on your teeth without slipping." *Id.*

60. While, the Sig-nature Whitening Strips are advertised as providing "a glamorous amazing-looking white smile" and that "[e]ach of our strips can stay on firmly for up to 2 hours without falling or shifting. It can even withhold drinking water or exercising."

61. Similarly, the Mentadent Whitening Strips with Coconut Oil are advertised as "SMILE BRIGHT" only "[a]fter 30-60 minutes" and that "[t]he strips have up to 2 hours of high-strength adhesion. They will not fall off or shift on the teeth even while drinking water or exercising."

62. The Premium Whitening Strips and Mentadent Whitening Strips with Coconut Oil instruct that to apply "fit strip, applying sticky gel side against you teeth. Line up with edge of gum and apply gentle pressure to mold strip securely to the teeth," while the Premium Whitening Strips instruct that to apply "[f]it the strips onto your teeth with the sticky gel side facing your teeth. Align the edge with your gum line and press gently to secure." *Id.*

63. An examination of each label of the GuruNanda Whitening Strips reveals that each product contains the ingredients: "PVP K30, Glycerin, Hydroxypropyl cellulose, PVP K90, Water, Alcohol, Hydrogen peroxide, Menthol, Coconut oil."

## COUNT I
## INFRINGEMENT – '259 PATENT

64. CAO re-alleges and incorporates by reference the allegations in paragraphs 1-63, as if fully set forth herein.

65. CAO is informed and believes, and on that basis alleges, that GuruNanda

infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '259 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling the GuruNanda Whitening Strips, including, but not limited to, Premium Whitening Strips, Sig-nature Whitening Strips and Mentadent Whitening Strips with Coconut Oil (collectively "GuruNanda's Infringing Whitening Strips" or "GuruNanda Whitening Strips"). For purposes of notice pleading, CAO shows below how the Sig-nature Whitening Strips infringe claim 1 of the '259 Patent as exemplary of GuruNanda's Infringing Whitening Strips.

66. GuruNanda's Infringing Whitening Strips are "A dental bleaching device, comprising:" - GuruNanda's Infringing Whitening Strips are teeth whitening strips, as described on the Sign-nature Whitening Strips packaging that it provides "WHITER TEETH IN 30-60 MINUTES."

67. "a dental bleaching device comprising a dental composition on a strip of backing material, wherein the strip of backing material is flexible and insoluble in water" - GuruNanda's Infringing Whitening Strips include a dental composition on a thin and flexible strip that is coated on one side with a sticky gel side with an adhesive containing hydrogen peroxide, and the backing material is insoluble in water.

68. wherein the dental bleaching device is packaged in a package:" - GuruNanda's Infringing Whitening Strips are shipped and stored in packaging.



69. "wherein the dental composition, when applied on the strip of backing material, comprise a peroxide bleaching agent, a first solvent, and a thickening agent; wherein the first solvent is water; wherein the thickening agent comprises at least one of poly(2-ethyl-2-oxazoline) and polyvinylpyrrolidone;" - GuruNanda's Infringing Whitening Strips have a dental composition applied on the strip of backing material that contain, among other ingredients, hydrogen peroxide ("a peroxide bleaching agent"), water ("a first solvent . . . wherein the first solvent is water"), and PVP ("the thickening agent comprises at least one of . . . polyvinylpyrrolidone."). *See* Paragraph 59.

70. "wherein, when the dental composition is applied on the strip of the backing material, the thickening agent is included in an amount more by weight of the dental composition than the water; wherein the dental composition is dried after being applied on the strip backing material" - GuruNanda's Infringing Whitening Strips dental compositions are dried after being applied on the strips and the GuruNanda's Infringing Whitening Strips list the order of ingredients on their packaging consistent with

Lahti Helfgott LLC

regulations pertaining to cosmetic labelling, where ingredients are listed in descending order of predominance (*see, e.g.*, 21 C.F.R. 701.3(a)). The GuruNanda's Infringing Whitening Strips list their ingredients in the following order: "PVP K30, Glycerin, Hydroxypropyl cellulose, PVP K90, Water, Alcohol, Hydrogen peroxide, Menthol, Coconut oil." and thus the dental composition of the GuruNanda's Infringing Whitening Strips contain more PVP than water.

71. "wherein the dental composition is gelatinous and viscoelastic (a) after the dental composition has been applied on the backing material and dried, (b) during storage of the dental bleaching device at room temperature for a period of time up to six months in the package, (c) after the dental bleaching device has been removed from the package, and (d) when the dental composition is flexibly positioned on teeth;" - GuruNanda's Infringing Whitening Strips contain (i) the claimed dental composition that is gelatinous and viscoelastic, as shown, for example, by its ability to flex and deform when the Signature Whitening Strip is freshly "removed from its package," as well as when the dental composition is removed and then pressure is applied to the dental composition with a glass capillary and then retracted showing that the dental composition first exhibits deformation with the pressure and then exhibits elasticity when it is retracted.



Lahti Helfgott LLC

What is more, the '259 Patent states that "a gelatinous compound, as the term is used in this Application, will have the same degree of flex and deformation as required to fit inside a container, but will not coalesce so that a specific sample or portions thereof are still determinable." ('259 Patent, 5:62-66). As shown in the pictures, the dental composition of the Sig-nature Whitening Strips did just that when placed in a container:



Start = 0 hours



Finish = 27 hours

(ii) the accused dental composition is viscoelastic, established based on the fact that the dental composition exhibits both viscous and elastic characteristics when undergoing deformation and/or strain such as when they flexed to be positioned on the teeth.

(iii) the accused dental composition is gelatinous and viscoelastic, and the same endured six month after storage at room temperature, as established by the outer packaging for the Sig-nature Whitening Strips expiration date being more than a year after the purchase date of the product and further states to "[s]tore in a cool, dry place."

72. "wherein the dental composition has physical deformation properties such that, after the dental bleaching device has been removed from the package, the dental

composition may be positioned on surfaces of adjacent teeth in a dental arch, bend and conform to surfaces of adjacent teeth in a dental arch and remain on the strip of backing material during use." - GuruNanda's Infringing Whitening Strips have the claimed physical deformation properties, as established by the above photos, as well as Signature Whitening Strips' application instructions of "APPLY & WAIT Looking in a mirror, fit strip, applying sticky gel side against your teeth. Line up with edge of gum and apply gentle pressure to mold and strip securely to the teeth."

73. As shown in the exemplary infringement mapping above, GuruNanda's Infringing Whitening Strips satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '259 Patent. CAO expressly reserves the right to identify additional asserted claims and products in its infringement contentions in accordance with this Court's Local Rules, scheduling order, and discovery. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '259 Patent claim.

74. GuruNanda's infringement is knowing, egregious, consciously wrongful, and willful. GuruNanda learned of the allowed claims of the '259 Patent no later than September 5, 2023. Despite this, GuruNanda elected to continue to infringe the '259 Patent without entering into a business relationship with CAO or paying for a license to the '259 Patent.

75. GuruNanda has been placed on actual notice of the '259 Patent by the September 5, 2023 correspondence from CAO. GuruNanda has also been placed on actual notice of the '259 Patent by the filing of this Complaint. GuruNanda also has constructive notice of the '259 patent at least by virtue of CAO's marking of its patented products.

76. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '259 Patent.

77. As a result of GuruNanda's infringement of the '259 Patent, CAO has been

injured by GuruNanda's unauthorized use of CAO's intellectual property. CAO seeks monetary damages in an amount adequate to compensate for GuruNanda's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and CAO will continue to suffer damages in the future unless GuruNanda's infringing activities are enjoined.

78. Unless an injunction is issued enjoying GuruNanda and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '259 Patent, CAO will be greatly and irreparably harmed.

## COUNT II
## INFRINGEMENT – '419 PATENT

79. CAO re-alleges and incorporates by reference the allegations in paragraphs 1-79, as if fully set forth herein.

80. CAO is informed and believes, and on that basis alleges, that GuruNanda infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '419 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling GuruNanda's Infringing Whitening Strips. For purposes of notice pleading, CAO shows below how the Sig-nature Whitening Strips infringe claim 1 of the '419 Patent as exemplary of GuruNanda's Infringing Whitening Strips.

81. GuruNanda's Infringing Whitening Strips are "A dental bleaching device, comprising:" - GuruNanda's Infringing Whitening Strips are teeth whitening strips, as described on the Sign-nature Whitening Strips packaging that it provides "WHITER TEETH IN 30-60 MINUTES."

82. "a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides" – GuruNanda's Infringing Whitening Strips have the claimed strip backing material, because, as described in the Sig-nature Whitening Strips instructions, "[t]he strips have up to 2 hours

of high-strength adhesion" and to apply "fit strip, applying sticky gel side against your teeth. Line up with edge of gum and apply gentle pressure to mold and strip securely to the teeth." The back material has two flat sides:



83. "a dental composition on one of the flat sides of the strip of backing material such that at least substantially all of one side of the backing material is covered solely by the dental composition;" – GuruNanda's Infringing Whitening Strips have the claimed dental composition on one of the flat sides of the strip as stated in the Sig-nature Whitening Strips package instructions, "[t]he strips have up to 2 hours of high-strength adhesion" and when applying "fit strip applying sticky gel side against your teeth." Indeed, the "sticky gel side" of the strip applied to the teeth, contains the dental composition throughout the entire side of the strip, and nothing other than this dental composition is contained on this "sticky gel side" of the strip.

84. "wherein the dental composition, when applied on the strip of backing material, comprise a peroxide bleaching agent, a first solvent, and a thickening agent; wherein the

Lahti Helfgott LLC

first solvent is water; wherein the thickening agent comprises at least one of poly(2-ethyl-2-oxazoline) and polyvinylpyrrolidone; wherein the dental agent is dried after being applied on the strip of backing material" - GuruNanda's Infringing Whitening Strips have this dental composition, as established by the allegations in paragraph 70 above, which are expressly incorporated by reference in their entirety into this paragraph, and GuruNanda's Infringing Whitening Strips dental composition is dried after being applied on the strip backing material, as established by the allegations in paragraph 70 above, which are expressly incorporated by reference in their entirety into this paragraph.

85. "wherein the dental composition is gelatinous and viscoelastic (a) after the dental composition has been applied on the backing material and dried, (b) during storage of the dental bleaching device at room temperature for a period of time up to six months in the package, (c) after the dental bleaching device has been removed from the package, and (d) when the dental composition is flexibly positioned on teeth;" - GuruNanda's Infringing Whitening Strips include the claimed gelatinous and viscoelastic dental composition, as established by the allegations in paragraph 71 above, which are expressly incorporated by reference in their entirety into this paragraph.

86. "wherein the dental composition has physical deformation properties such that, after the dental bleaching device has been removed from the package, the dental composition may be positioned on surfaces of adjacent teeth in a dental arch, bend and conform to surfaces of adjacent teeth in a dental arch and remain on the strip of backing material during use." - GuruNanda's Infringing Whitening Strips include the claim dental composition physical deformation properties, as established by the allegations in paragraph 72 above, which are expressly incorporated by reference in their entirety into this paragraph.

87. "wherein the dental composition has adhesive properties such that, after the dental

Lahti Helfgott LLC

bleaching device has been removed from a package and is then positioned on adjacent teeth in a dental arch, the dental composition will adhere to surfaces of adjacent teeth in a dental arch." – GuruNanda's Infringing Whitening Strips have the claimed dental composition adhesive properties as shown in the Sig-nature Whitening Strips package instructions that show the strip has "up to 2 hours of high-strength adhesion" and the strip should be applied "sticky gel side against the teeth" and the "line up with the edge if gum and apply gentle to mold and strip securely to the teeth."

88. As shown in the exemplary infringement mapping above, GuruNanda's Infringing Whitening Strips satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '419 Patent. CAO expressly reserves the right to identify additional asserted claims and products in its infringement contentions in accordance with this Court's Local Rules, scheduling order, and discovery. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '419 Patent claim.

89. GuruNanda's infringement is knowing, egregious, consciously wrongful, and willful. GuruNanda learned of the allowed claims of the '419 Patent no later than September 5, 2023. Despite this, GuruNanda elected to continue to infringe the '419 Patent without entering into a business relationship with CAO or paying for a license to the '419 Patent.

90. GuruNanda has been placed on actual notice of the '419 Patent by the September 5, 2023 correspondence from CAO. GuruNanda has also been placed on actual notice of the '419 Patent by the filing of this Complaint. GuruNanda also has constructive notice of the '419 patent at least by virtue of CAO's marking of its patented products.

91. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '419 Patent.

92. As a result of GuruNanda's infringement of the '419 Patent, CAO has been

injured by GuruNanda's unauthorized use of CAO's intellectual property. CAO seeks monetary damages in an amount adequate to compensate for GuruNanda's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and CAO will continue to suffer damages in the future unless GuruNanda's infringing activities are enjoined.

93. Unless an injunction is issued enjoying GuruNanda and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '419 Patent, CAO will be greatly and irreparably harmed.

## COUNT III
## INFRINGEMENT – '582 PATENT

94. CAO re-alleges and incorporates by reference the allegations in paragraphs 1-93, as if fully set forth herein.

95. CAO is informed and believes, and on that basis alleges, that GuruNanda infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '582 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling GuruNanda's Infringing Whitening Strips. For purposes of notice pleading, CAO shows below how the Sig-nature Whitening Strips infringe claim 1 of the '582 Patent as exemplary of GuruNanda's Infringing Whitening Strips.

96. GuruNanda's Infringing Whitening Strips are "A dental bleaching device, comprising:" - GuruNanda's Infringing Whitening Strips are teeth whitening strips, as described on the Sign-nature Whitening Strips packaging that it provides "WHITER TEETH IN 30-60 MINUTES."

97. "a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides" – GuruNanda's Infringing Whitening Strips have the claimed strip backing material, because, as described in the Sig-nature Whitening Strips instructions, "[t]he strips have up to 2 hours

of high-strength adhesion" and to apply "fit strip, applying sticky gel side against your teeth. Line up with edge of gum and apply gentle pressure to mold and strip securely to the teeth." The back material has two flat sides:



98. "a dental composition being applied to at least a portion of one of the flat sides of the strip of backing material;" – GuruNanda's Infringing Whitening Strips have the claimed dental composition on one of the flat sides of the strip as stated in the Sig-nature Whitening Strips package instructions, "[t]he strips have up to 2 hours of high-strength adhesion" and when applying "fit strip applying sticky gel side against your teeth."

99. "the dental composition being comprised of a peroxide bleaching agent, a solvent, and a thickening agent, said thickening agent being at least one thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and polyvinylpyrrolidone (PVP);" - GuruNanda's Infringing Whitening Strips has a dental composition that has hydrogen peroxide (a peroxide bleaching agent), water (a solvent) and PVP K30 & PVP K90 (a thickening agent selected from . . .polyvinylpyrrolidone (PVP).

100.    "the dental composition having been dried to an extent that it no longer

Lahti Helfgott LLC

remains in a state of fluidity" – GuruNanda's Infringing Whitening Strips has a dental composition that is gelatinous and visco-elastic, not fluid, as established by the allegations in paragraph 71 above, which are expressly incorporated by reference in their entirety into this paragraph.

101.    "wherein the dried dental composition is gelatinous, non-coalescent, and visco-elastic such that when adhered to a user's dental arch both the dental composition and the backing material flex and conform to a user's dental arch without cracking or breaking." – GuruNanda's Infringing Whitening Strips has a dental composition that is gelatinous, non-coalescent, and visco-elastic, as established by the allegations in paragraph 71 above, which are expressly incorporated by reference in their entirety into this paragraph; what is more, as shown by the Sig-nature Whitening Strips packaging instructions state that to apply "fit strip, applying sticky gel side against your teeth. Line up with edge of gum and apply gentle pressure to mold and strip securely to the teeth."

102.    As shown in the exemplary infringement mapping above, GuruNanda's Infringing Whitening Strips satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '582 Patent. CAO expressly reserves the right to identify additional asserted claims and products in its infringement contentions in accordance with this Court's Local Rules, scheduling order, and discovery. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '582 Patent claim.

103.    GuruNanda's infringement is knowing, egregious, consciously wrongful, and willful. GuruNanda learned of the allowed claims of the '582 Patent no later than September 5, 2023. Despite this, GuruNanda elected to continue to infringe the '582 Patent without entering into a business relationship with CAO or paying for a license to the '582 Patent.

104.    GuruNanda has been placed on actual notice of the '582 Patent by the

Lahti Helfgott LLC

September 5, 2023 correspondence from CAO. GuruNanda has also been placed on actual notice of the '582 Patent by the filing of this Complaint. GuruNanda also has constructive notice of the '582 patent at least by virtue of CAO's marking of its patented products.

105.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '582 Patent.

106.    As a result of GuruNanda's infringement of the '582 Patent, CAO has been injured by GuruNanda's unauthorized use of CAO's intellectual property. CAO seeks monetary damages in an amount adequate to compensate for GuruNanda's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and CAO will continue to suffer damages in the future unless GuruNanda's infringing activities are enjoined.

107.    Unless an injunction is issued enjoying GuruNanda and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '582 Patent, CAO will be greatly and irreparably harmed.

## COUNT IV
## INFRINGEMENT – '444 PATENT

108.    CAO re-alleges and incorporates by reference the allegations in paragraphs 1-107, as if fully set forth herein.

109.    CAO is informed and believes, and on that basis alleges, that GuruNanda infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '444 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling GuruNanda's Infringing Whitening Strips. For purposes of notice pleading, CAO shows below how the Sig-nature Whitening Strips infringe claim 1 of the '444 Patent as exemplary of GuruNanda's Infringing Whitening Strips.

110.    GuruNanda's Infringing Whitening Strips are "A dental whitening device,

comprising:" - GuruNanda's Infringing Whitening Strips are teeth whitening strips, as described on the Sign-nature Whitening Strips packaging that it provides "WHITER TEETH IN 30-60 MINUTES."

111.    "a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides" – GuruNanda's Infringing Whitening Strips have the claimed strip backing material, because, as described in the Sig-nature Whitening Strips instructions, "[t]he strips have up to 2 hours of high-strength adhesion" and to apply "fit strip, applying sticky gel side against your teeth. Line up with edge of gum and apply gentle pressure to mold and strip securely to the teeth." The back material has two flat sides:



112.    "a gelatinous, non-coalescent, visco-elastic dental composition conjoined to at least a portion of one of the flat sides of the strip of backing material" – GuruNanda's Infringing Whitening Strips have a dental composition that is gelatinous, non-coalescent, and visco-elastic, as established by the allegations in paragraph 71

Lahti Helfgott LLC

above, which are expressly incorporated by reference in their entirety in this paragraph, and GuruNanda's Infringing Whitening Strips have the dental composition being applied to one flat side of the strip baking material as reveled by the Sig-nature Whitening Strips package instructions statement that to apply "sticky gel side against your teeth"

113.      "the dental composition being comprised of a tooth whitening agent, a solvent, and a thickening agent selected from the set of thickening agents consisting of polyethyloxazolie and polyvinylpyrrolidone (PVP);" - GuruNanda's Infringing Whitening Strips has a dental composition that has hydrogen peroxide (tooth whitening agent), water (a solvent) and PVP K30 and PVP K90 (a thickening agent selected from . . .polyvinylpyrrolidone (PVP)).

114.      " wherein when adhered to a user's dental arch both the dental composition and the backing material flex and conform to the user's dental arch without cracking or breaking." - GuruNanda's Infringing Whitening Strips contain a dental composition and backing material that flex and conform to the user's dental arch without cracking or breaking, as shown by the Sig-nature Whitening Strips application instructions to "fit strip, applying sticky gel side against teeth" and then to "[l]ine up with edge of gum and apply gentle pressure to mold and strip securely to the teeth."

115.      As shown in the exemplary infringement mapping above, GuruNanda's Infringing Whitening Strips satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '444 Patent. CAO expressly reserves the right to identify additional asserted claims and products in its infringement contentions in accordance with this Court's Local Rules, scheduling order, and discovery. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '444 Patent claim.

116.      GuruNanda has been placed on actual notice of the '444 Patent by the filing

Lahti Helfgott LLC

of this Complaint. GuruNanda also has constructive notice of the '444 patent at least by virtue of CAO's marking of its patented products.

117.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '444 Patent.

118.    As a result of GuruNanda's infringement of the '444 Patent, CAO has been injured by GuruNanda's unauthorized use of CAO's intellectual property. CAO seeks monetary damages in an amount adequate to compensate for GuruNanda's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and CAO will continue to suffer damages in the future unless GuruNanda's infringing activities are enjoined.

119.    Unless an injunction is issued enjoying GuruNanda and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '444 Patent, CAO will be greatly and irreparably harmed.

## COUNT V
## INFRINGEMENT – '445 PATENT

120.    CAO re-alleges and incorporates by reference the allegations in paragraphs 1-119, as if fully set forth herein.

121.    CAO is informed and believes, and on that basis alleges, that GuruNanda infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '445 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling GuruNanda's Infringing Whitening Strips. For purposes of notice pleading, CAO shows below how the Sig-nature Whitening Strips infringe claim 1 of the '445 Patent as exemplary of GuruNanda's Infringing Whitening Strips.

122.    GuruNanda's Infringing Whitening Strips are "A dental bleaching device, comprising:" - GuruNanda's Infringing Whitening Strips are teeth whitening strips, as described on the Sign-nature Whitening Strips packaging that it provides "WHITER

Lahti Helfgott LLC

TEETH IN 30-60 MINUTES."

123.　　"a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides" – GuruNanda's Infringing Whitening Strips have the claimed strip backing material, because, as described in the Sig-nature Whitening Strips instructions, "[t]he strips have up to 2 hours of high-strength adhesion" and to apply "fit strip, applying sticky gel side against your teeth. Line up with edge of gum and apply gentle pressure to mold and strip securely to the teeth." The back material has two flat sides:



124.　　"a gelatinous, non-coalescent, visco-elastic dental composition conjoined to at least a portion of one of the flat sides of the strip of backing material" – GuruNanda's Infringing Whitening Strips have a dental composition that is gelatinous, non-coalescent, and visco-elastic, as established by the allegations in paragraph 71 above, which are expressly incorporated by reference in their entirety in this paragraph, and GuruNanda's Infringing Whitening Strips have the dental composition being

Lahti Helfgott LLC

applied to one flat side of the strip baking material as reveled by the Sig-nature Whitening Strips application instruction to "fit strip, applying sticky gel side against your teeth."

125.     "the dental composition being comprised of a peroxide bleaching agent, a solvent, and a thickening agent selected from the set of thickening agents consisting of polyethyloxazolie and polyvinylpyrrolidone (PVP);" - GuruNanda's Infringing Whitening Strips has a dental composition that has hydrogen peroxide (a peroxide bleaching agent), water (a solvent) and PVP K30 and PVP K90 (a thickening agent selected from . . .polyvinylpyrrolidone (PVP)).

126.     " wherein when adhered to a user's dental arch both the dental composition and the backing material flex and conform to the user's dental arch without cracking or breaking." - GuruNanda's Infringing Whitening Strips contain a dental composition and backing material that flex and conform to the user's dental arch without cracking or breaking, as shown by the Sig-nature Whitening Strips application instructions to "fit strip, applying sticky gel side against your teeth" and to "[l]ine up with edge of gum and apply gentle pressure to mold and strip securely to the teeth."

127.     As shown in the exemplary infringement mapping above, GuruNanda's Infringing Whitening Strips satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '445 Patent. CAO expressly reserves the right to identify additional asserted claims and products in its infringement contentions in accordance with this Court's Local Rules, scheduling order, and discovery. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '445 Patent claim.

128.     GuruNanda has been placed on actual notice of the '445 Patent by the filing of this Complaint. GuruNanda also has constructive notice of the '445 patent at least by virtue of CAO's marking of its patented products.

129.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '445 Patent.

130.    As a result of GuruNanda's infringement of the '445 Patent, CAO has been injured by GuruNanda's unauthorized use of CAO's intellectual property. CAO seeks monetary damages in an amount adequate to compensate for GuruNanda's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and CAO will continue to suffer damages in the future unless GuruNanda's infringing activities are enjoined.

131.    Unless an injunction is issued enjoying GuruNanda and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '445 Patent, CAO will be greatly and irreparably harmed.

### PRAYER FOR RELIEF

Plaintiff CAO Group Inc. prays for the following relief:

1.  A judgment that GuruNanda has infringed one or more claims of the '259 Patent, '419 Patent, '582 Patent, '444 Patent, and '445 Patent;

2.  A permanent injunction enjoining GuruNanda and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other acting in active concert or participation with GuruNanda, from infringing '259 Patent, '419 Patent, '582 Patent, '444 Patent, and '445 Patent;

3.  An award of damages resulting from GuruNanda's acts of infringement in accordance with 35 U.S.C. § 284;

4.  A judgment and order finding that GuruNanda's acts of infringement were egregious and willful and trebling damages under 35 U.S.C. § 284;

5.  A judgment and order requiring GuruNanda to provide accounting and to pay supplemental damages to CAO, including, without limitation, prejudgment and post-judgment interest; and

6. Any and all other relief to which Plaintiff may show itself to be entitled or the Court deems just and appropriate.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, CAO hereby demands a jury trial as to all issues so triable.

Dated: September 12, 2025                LAHTI HELFGOTT LLC

By: */s/ Brian E. Lahti*
    Brian E. Lahti

*Attorneys for Plaintiff*

Lahti Helfgott LLC